UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTHONY JERDINE, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-01840 (PLF) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, *et al.*, | ) | |
| Defendants. | ) | |

OPINION

This matter is before the Court on the defendants' motions to dismiss.[1] For the reasons discussed in this Opinion, the motions will be granted, and this action will be dismissed with prejudice.

I. BACKGROUND

Plaintiffs Anthony and Darryl Jerdine bring this action against the Federal Deposit Insurance Corporation ("FDIC") in its capacity as the receiver for Washington Mutual Bank ("WaMu"), Select Portfolio Servicing Inc. ("SPS"), and DLJ Mortgage Capital Inc. ("DLJ") on claims arising "in Cuyahoga County, Ohio by virtue of a mortgage loan and related inter-

---

[1] Also before the Court is the Federal Deposit Insurance Corporation's Motion to Strike or Disregard Plaintiffs' Notice of Deposit of General Service Administration Bonds [Dkt. #29]. The motion will be granted, as the plaintiffs' Notice is not relevant to the issues presented in this action. Plaintiffs' Notice [Dkt. #28] will be stricken.

temporal transactions associated therewith which concern the [p]laintiffs' primary residential real estate which is located in Pepper Pike, Ohio 44124[.]" Compl. ¶ 9.

Plaintiffs secured mortgage financing from WaMu. Compl. ¶ 21. At the closing in February 2005, they "executed Promissory Notes and Security Agreements in favor of . . . WaMu," *id.*, which "retained a security in [the] Pepper Pike, Ohio [property]." *Id.* ¶ 22. For the first two years, the interest rate was fixed; thereafter the rate adjusted at six-month intervals. *Id.* ¶ 12. WaMu allegedly entered into this transaction knowing that plaintiffs could not repay the loan and that "[p]laintiffs likely would be placed in a position of default, foreclosure, and deficiency judgment upon not being able to meet their increased loan obligations once the fixed rate interest period expired and the adjustable rate applied[.]" *Id.* ¶ 11(e). WaMu "assigned the Note and mortgage to . . . SPS," *id.* ¶ 29, which in turn bundled the loan with others to be sold as a mortgage-backed security. *See id.* ¶¶ 11(g), 30, 108.

### A. Foreclosure Proceedings

On August 23, 2005, WaMu initiated foreclosure proceedings in the Court of Common Pleas for Cuyahoga County, Ohio against Darryl Jerdine, ALJ Holdings Group, Ltd., and Citibank Federal Savings Bank "alleging breach of a promissory note for a 2005 mortgage secured by a mortgage deed for Ohio real property." Memorandum of Points and Authorities in Support of the [FDIC's] Motion to Dismiss ("FDIC Mem.") at 4; *see id.*, Ex. 1 (Docket, *Wash. Mut. Bank v. Jerdine*, No. CV-05-570626 (Cuyahoga County Ohio Ct. Com. Pl. Oct. 23, 2005)) at 13. On February 12, 2007, a judge of the Court of Common Pleas adopted a magistrate's decision, decreed foreclosure for WaMu, and entered judgment in WaMu's favor in the amount

of $1,017,663.33 plus interest. *Id.,* Ex. 1 (Journal Entry, *Wash. Mut. Bank v. Jerdine*, No. CV-05-570626 (Cuyahoga County Ohio Ct. Com. Pl. Feb. 12, 2007)) at 7. The court authorized the Sheriff of Cuyahoga County to sell the property and to dispose of the proceeds of the sale. *Id.*, Ex. 1(Magistrate's Decision, *Wash. Mut. Bank v. Jerdine,* No. CV-05-570626 (Cuyahoga County Ohio Ct. Com. Pl. filed Jan. 12, 2007) at 19-20.

Darryl Jerdine twice appealed this decision. FDIC Mem., Ex. 1 (Dockets, *Wash. Mut. Bank v. Jerdine*, No. CA-08-091823 (Ohio 8th Dist. Ct. App. July 18, 2008) and *Wash. Mut. Bank v. Darryl Jerdine*, No. 08-091444 (Ohio 8th Dist. Ct. App. filed May 16, 2008)) at 25-26, 29-30. Both appeals were dismissed. *Id.*, Ex. 1 (Journal Entries, *Wash. Mut. Bank v. Darryl Jerdine*, No. CA-08-091823 (Ohio 8th Dist. Ct. App. August 18, 2008), and *Wash. Mut. Bank v. Darryl Jerdine*, No. CA-08-091444 (Ohio 8th Dist. Ct. App. filed June 2, 2008)) at 27, 29.

### B. Challenges to Foreclosure Proceedings

In October 2007, Anthony Jerdine filed a civil action in the United States District Court for the Northern District of Ohio against WaMu, Judge Bridget M. McCafferty, the judge who presided over the foreclosure proceedings, and Cuyahoga County Sheriff Gerald T. McFaul, who sold the Pepper Pike property. *See* FDIC Mem., Ex. 2 (Civil Docket, *Jerdine v. Wash. Mut. Bank*, No. 07-cv-02984 (N.D. Ohio Oct. 1, 2007)). SPS and DLJ characterized the complaint as one to "[q]uiet [t]itle which included allegations of racketeering and alleging a private nuisance against [WaMu], Magistrate McCafferty and the sheriff who was to conduct the sale of the [Pepper Pike] [p]roperty." Defs.' [SLS] and [DLJ] Memorandum of Points and Authorities in

3

Support of Motion to Dismiss Plaintiffs' Complaint ("Defs.' Mem.") at 2-3. Anthony Jerdine alleged that the Court of Common Pleas of Cuyahoga County had not been created by law, that the Ohio Revised Code had not been enacted, that Judge McCafferty did not properly hold her position, and that Sheriff McFaul had no authority to sell off the Pepper Pike property, such that the foreclosure sale was void. Complaint, *Jerdine v. Wash. Mut. Bank*, No. 07-cv-02984 (N.D. Ohio Oct. 1, 2007). Among other relief, plaintiff demanded that the district court void the Ohio Court of Common Pleas' January 12, 2007 decision, quiet title in plaintiff's favor, and enjoin the sale of the Pepper Pike property, which was to occur later in the month of October 2007. *See id.*

The district court dismissed the action *sua sponte* on the ground that a federal district court has no jurisdiction over challenges to state court decisions. Its opinion stated in relevant part:

> In the present action, plaintiff directly attacks a state court's decision, and the action is clearly predicated on his belief that the state court was mistaken in rendering its decision against him. Any review of plaintiff's claims would require the court to review the specific issues addressed in the state court proceedings. This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested. In light of the foregoing, this action is appropriately subject to summary dismissal.

*Jerdine v. Wash. Mut. Bank*, No. 1:07-cv-2984, 2007 U.S. Dist. LEXIS 75288, at *3 (N.D. Ohio Oct. 10, 2007) (internal citations omitted). In short, "[u]nder . . . the Rooker-Feldman Doctrine, a party losing a case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his . . . federal rights." *Id.*, 2007 U.S. Dist. LEXIS 75288, at *2.

4

The Sixth Circuit affirmed without opinion. Order, *Jerdine v. Wash. Mut. Bank*, No. 08-3676 (6th Cir. Feb. 4, 2010).

In March 2008, Darryl Jerdine filed a petition for a writ of mandamus in the Court of Appeals of Ohio, Eighth District, seeking to stay the underlying foreclosure proceedings. FDIC Mem., Ex. 3 (Docket, *In re Darryl Jerdine*, No. CA-08-091172 (Ohio 8th Dist. Ct. App. Mar. 19, 2008)) at 2. The court struck the pleading because Jerdine "failed to establish that he [was] entitled to a writ of mandamus." *In re Jerdine*, No. CA-08-091172 , 2008 Ohio App. LEXIS 1648, at *5 (Ohio 8th Dist. Ct. App. Apr. 21, 2008).

Returning to the Court of Common Pleas, Darryl Jerdine filed a new civil action against WaMu and others. FDIC Mem., Ex. 4 (Docket, *Jerdine v. Select Portfolio Servs.*, No. CV-08-668159 (Cuyahoga County Ohio Ct. Com. Pl. Aug. 19, 2008)). The court dismissed these proceedings without prejudice because of plaintiff's failure to comply with two court orders. *Id.*, Ex. 4 at 1. Darryl Jerdine appealed, but the appeal was dismissed on March 20, 2009. *Id.*, Ex. 4 (Docket, *Jerdine v. Select Portfolio Servs.*, No. CA-09-092890 (Ohio 8th Dist. Ct. App. Mar. 20, 2009)) at 11.

On February 10, 2009, Anthony Jerdine and Darryl Jerdine filed a civil action in the United States District Court for the Northern District of Ohio against the FDIC, WaMu, SLS and DLJ. Complaint, *Jerdine v. Fed. Deposit Ins. Corp.*, No. 1:09-cv-00307-JG (N.D. Ohio Feb. 10, 2009).[2] The court dismissed the complaint on the ground that the doctrine of res judicata barred Anthony Jerdine's "third attempt to collaterally attack the foreclosure judgment

---

[2] The Court concurs with defendants' assessment, *see* FDIC Mem. at 6 n.4; Defs.' Mem. at 4, that the Supplemental Complaint filed in the Northern District of Ohio is practically identical to the complaint filed in the instant civil action.

issued against him in the Cuyahoga County Court of Common Pleas." Memorandum Opinion and Order, *Jerdine v. Fed. Deposit Ins. Corp.*, No. 1:09-cv-00307 (N.D. Ohio June 18, 2009) at 4. The Jerdines appealed the decision to the Sixth Circuit. Notice of Appeal, *Jerdine v. Fed. Deposit Ins. Corp.*, No. 1:09-cv-00307 (N.D. Ohio June 18, 2009). The appeal subsequently was dismissed for want of prosecution, that is, for failure to pay the filing fee within the time period set by the Circuit. Order, *Jerdine v. Fed. Deposit Ins. Corp.*, No. 09-3955 (6th Cir. July 14, 2010).

On March 23, 2009, Anthony Jerdine and Darryl Jerdine filed yet another complaint in the Court of Common Pleas against the FDIC. FDIC Mem., Ex. 6 (Docket, Case No. CV-09-688130 (Cuyahoga County Ohio Ct. Com. Pl. Mar. 23, 2009) at 6. The matter was dismissed on July 30, 2009 because plaintiffs had not appeared for a pre-trial conference. *See id.* at 2.

Thereafter, Anthony Jerdine and Darryl Jerdine filed a civil action against the FDIC in the United States District Court for the Western District of Washington . Complaint, *Jerdine v. Fed. Deposit Ins. Corp.*, No. 09-cv-01596 (W.D. Wash. Nov. 9, 2009). As of the date of this Opinion, this civil action is still pending.

### C. Administrative Claims to the FDIC

The FDIC became WaMu's receiver on September 25, 2008. In December 2008, plaintiffs submitted two administrative claims to the FDIC. FDIC Mem., Ex. 8 (Proof of Claim) at 1-2. By letters of notice dated June 22, 2009, the FDIC notified plaintiffs of the disallowance of their claims. *Id.*, Ex. 8 (Notices of Disallowance of Claims) at 3-4. In neither instance did

plaintiffs provide factual allegations or proof to support their claims. *See id.* The FDIC notices included the following statement:

> Pursuant to [12 U.S.C. § 1821(d)(6)], if you do not agree with this disallowance, you have the right to file a lawsuit on your claim . . . in the United States District . . . Court within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.
>
> **IF YOU DO NOT FILE A LAWSUIT . . . BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.**

*Id.*, Ex. 8 at 8 (emphasis in original); *see id.*, Ex. 8 at 9.

### D. Civil Action No. 09-1840

The Clerk of this Court received plaintiffs' complaint on August 31, 2009, evidenced by the date stamp on the first page of the original pleading. On that date the Clerk also received Anthony Jerdine's application to proceed *in forma pauperis*. The Clerk provisionally filed these items on the Court's electronic docket on September 28, 2009, pending receipt of a certified copy of Anthony Jerdine's trust fund account statement.[3] The application permitting plaintiffs to proceed *in forma pauperis* was approved on November 3, 2009.

---

[3] Anthony Jerdine was incarcerated at the time plaintiffs filed their complaint. As a prisoner, he was required to submit a certified copy of his trust fund account statement (or institutional equivalent), including the supporting ledger sheets, for the six-month period immediately preceding the filing of this complaint, obtained from the appropriate official of each prison at which plaintiff is or was confined. 28 U.S.C. § 1915. The Court approved his application to proceed *in forma pauperis* on review of his trust fund account statement. Darryl Jerdine did not submit a separate application to proceed *in forma pauperis*.

Generally, plaintiffs allege that defendants have violated the Home Ownership Equity Protection Act, 15 U.S.C. § 1639 *et seq.*; the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; and various provisions of Ohio law. Plaintiffs also assert common law tort claims of fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, and civil conspiracy. Among other relief, plaintiffs demand a declaratory judgment rendering the mortgage loan transaction void and finding that WaMu lacked standing to bring the underlying foreclosure action, in addition to an award of $27.4 million in damages.

## II. DISCUSSION

### A. Lack of Subject Matter Jurisdiction Under FIRREA

The FDIC moves to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the Court lacks subject matter jurisdiction. "Federal courts are courts of limited jurisdiction . . . [and it] is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). It is plaintiffs' burden to demonstrate that this Court has subject matter jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In ruling on a motion under Rule 12(b)(1), the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), *see* 12 U.S.C. § 1821(d), the Director of the Office of Thrift Supervision may appoint a receiver "for the purpose of liquidation or winding up any savings association's

8

affairs." 12 U.S.C. § 1821(d)(6). In its capacity as WaMu's receiver, the FDIC is obligated to "publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice." 12 U.S.C. § 1821(d)(3)(B). Under FIRREA, the FDIC is authorized "after the declaration of an institution's insolvency, [to] settle all uninsured and unsecured claims on the receivership with a final settlement payment which shall constitute full payment and disposition of the [FDIC's] obligations to such claimants." 12 U.S.C. § 1821(d)(4)(B)(i); *see City of New York v. Fed. Deposit Ins. Corp.*, 40 F. Supp. 2d 153, 159 (S.D.N.Y. 1999 ) (describing FDIC's claims process). The FDIC is obligated to make its decision to allow or disallow a claim within 180 days of its receipt, 12 U.S.C. § 1821(d)(5)(A)(i), unless the FDIC and the claimant agree in writing to extend this time period, 12 U.S.C. § 1821(d)(5)(A)(ii). If it disallows a claim, the FDIC must provide written notice of the disallowance, 12 U.S.C. § 1821(d)(5), after which a claimant may seek either administrative review of the disallowance or judicial review, 12 U.S.C. § 1821(d)(6)(A). There is a 60-day period within which a claimant must file a civil action in a federal district court; if he "fails to . . . file suit on such claim . . . before the end of the 60-day period . . ., the claim shall be deemed to be disallowed. [As] of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B).

    The FDIC argues that plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction because the pleading was not timely filed. FDIC Mem. at 8-10. According to the FDIC, plaintiffs filed their complaint on September 28, 2009, "more than 90 days after the FDIC-Receiver's letter disallowing their administrative claims," *id.* at 10, and, therefore, plaintiffs "have no further rights or remedies as to any claim against WaMu." *Id.*

9

On June 2, 2009, the FDIC requested an extension until December 17, 2009 to make its determination on plaintiffs' administrative claim. Memorandum of Points and Authorities in Support of the Plaintiffs' Motion to Oppose Dismissal ("Pls.' Opp'n to FDIC Mot."), Ex. A (Request for Extension) at 1. Plaintiffs argue that they "had until December 17, 2009" to file their complaint in a federal district court because the FDIC requested, and plaintiffs agreed to, an extension of the 180-day period within which a decision on the claim was to be made. Pls.' Opp'n to FDIC Mot. at 2. Plaintiffs apparently consider the FDIC's extended deadline, December 17, 2009, as the filing deadline for this lawsuit. Their position is untenable.

By consenting to the FDIC's request for an extension of time for the receiver to allow or disallow plaintiffs' claims, plaintiffs agreed to the following provision:

> If you agree to the requested extension of time, your statutory rights will remain in full force, including the right to file a lawsuit on your claim during the 60-day period beginning on the **earlier** of (1) the expiration of the Extended Determination Date; or (2) the date the claim is disallowed by the Receiver, if it is disallowed.

*Id.*, Ex. A at 1 (emphasis in original). By virtue of this extension the FDIC had until December 17, 2009 to make its determination, but the FDIC in fact made its decision denying plaintiffs' claims on June 22, 2009. The 60-day period within which plaintiffs were required to file a civil action therefore began to run on June 22, 2009, the date of the FDIC's written notice of the denial of their claims. It ended sixty days later on or about August 21, 2009. Based on the Clerk's "received" stamp on the original pleading, plaintiffs' complaint was deemed filed on August 31, 2009, 70 days after the date on which the FDIC disallowed their claims. Plaintiffs' complaint therefore was untimely.

Because plaintiffs did not file their lawsuit within sixty days as required by Congress under the FIRREA, the FDIC's determination is final and not reviewable by this Court. *See Hanson v. Fed. Deposit Ins. Corp.*, 113 F.3d 866, 869-70 (8th Cir. 1997) ("[T]he failure of a claimant to satisfy the requirements of § 1821(d)(6)(B) within the prescribed time period bars the claimant from seeking judicial review of his claim."); *Fed. Deposit Ins. Corp. v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 132 (3d Cir. 1991) ( "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821."); *Jette v. Orange County Fin., Inc.*, No. 2:08-CV-1767-GEB-EFB, 2009 WL 5029563, at *3 (E.D. Cal. Dec. 15, 2009) (concluding that "Plaintiffs' failure to act within the sixty day statutory time period is fatal to their [Truth in Lending Act ] claim against the FDIC"); *Judd v. Resolution Trust Corp.*, No. 95-1074, 1997 WL 678171, at *17 (D.D.C. Oct. 22, 1997) (Magistrate Judge recommendation to dismiss claims against receiver because plaintiffs "delayed over one year past the . . . statutory deadline for filing an action"); *Arends v. Eurobank and Trust Co.*, 845 F. Supp. 60, 64 (D.P.R. 1994) (dismissing claims of plaintiffs who failed to file suit within the 60-day period); *Freeman v. Resolution Trust Corp.*, No. C-93-4215-VRW, 1994 WL 398515, at *3 (N.D. Cal. July 20, 1994) ("The court has no jurisdiction over claims filed outside of the 60-day statute of limitations mandated by § 1821(d)(6)(B).").

### B. Lack of Subject Matter Jurisdiction Under Rooker-Feldman Doctrine

"The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court" because they are without jurisdiction to do so. *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002) (citing *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fiduciary Trust Co.*, 263 U.S. 413 (1923)); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 208 (2005) ("The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

In this case, it is apparent that plaintiffs, yet again, ask a federal court to overturn the Ohio courts' rulings with respect to the foreclosure proceedings and thus to reestablish their legal rights with respect to the Pepper Pike property. Notwithstanding plaintiffs' allegations of violations of federal law, the *Rooker-Feldman* doctrine I s jurisdictional, *see Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 75 (D.C. Cir. 1997), and "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 513 U.S. 997, 1005-06 (1994). Under the *Rooker-Feldman* doctrine, Darryl Jerdine as the loser in the foreclosure proceeding cannot seek review of the Ohio judgment in this federal lawsuit. *See Hunter v. U.S. Bank Nat'l Ass'n*, No. 09-1205, 2010 WL 1037945, at *5 (D.D.C. Mar. 22, 2010) (finding that plaintiff who lost foreclosure action brought against him in state court and subsequently filed federal lawsuit to contest validity of that judgment fell within ambit of the *Rooker-Feldman* doctrine); *see also Broome v. Sharonview Fed. Credit Union*, No. 3:10CV192-RJC-DSC, 2010 WL 2342453, at *2 (W.D.N.C. June 8, 2010) (Magistrate Judge's recommendation to dismiss action involving

foreclosure of deed of trust and execution of writ of possession issued by state court under *Rooker-Feldman* doctrine).

## III. CONCLUSION

The Court concludes that plaintiffs' claims against the FDIC are barred by operation of 12 U.S.C. § 1821(d)(6), and that their claims against all defendants are barred under the *Rooker-Feldman* doctrine. Accordingly, defendants' motions to dismiss will be granted and plaintiffs' summary judgment motion will be denied. An appropriate Order accompanies this Opinion.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: August 13, 2010